## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **SYLVIA OGBONNA on behalf of and as representative for DEMEKIA COLA,** | § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **EP-13-CV-347-KC** |
| **USPLABS, LLC; JONATHAN VINCENT DOYLE; JACOB GEISSLER; USPLABS JACK3D, LLC; USPLABS OXYELITE, LLC; USPLABS HOLDING, LLC; NATURAL ALTERNATIVES INTERNATIONAL, INC.,; and DOES 1-500, inclusive;** | § § § § § § § § § | |
| **Defendants.** | § § | |

## ORDER

On this day, the Court considered the Renewed Motion to Dismiss (the "Motion"), ECF No. 32, filed by Defendants Jonathan Vincent Doyle ("Doyle"); Jacob Geissler ("Geissler"); USPLabs, LLC; USPLabs Jack3D, LLC; USPLabs OxyElite, LLC; and USPLabs Holding, LLC (collectively "USP Defendants") in the above-captioned case (the "Case").[1] By the Motion, USP Defendants request that the Court dismiss the Case in its entirety.[2]  *See* Mot. 21. For the following reasons, the Court **GRANTS** the Motion in part and **DENIES** the Motion in part. The Court also **ALLOWS** Plaintiff to move to further amend her pleadings in a manner consistent

---

[1] USP Defendants filed an initial motion to dismiss the Case (the "Initial Motion"), ECF No. 28, on February 3, 2014. The Motion renews USP Defendants' request that the Court dismiss the Case in its entirety. *See* Mot. The Court's disposition of the Motion renders the Initial Motion moot.

[2] The Court previously dismissed Defendant Natural Alternatives International, Inc. from the Case. *See* ECF No. 31. As a result, dismissing all causes of action against USP Defendants would wholly dispose of the Case.

with this Order, this Court's Scheduling Order, ECF No. 40, and applicable law.

## I.     BACKGROUND

For the purposes of the Motion, the Court assumes the truth of the following well-pleaded factual allegations in Plaintiff's First Amended Complaint, ECF No. 29, which is the live pleading in the Case: Demekia Cola ("Decedent") ingested certain dietary supplements that caused her to suffer rhabdomyolysis, hyperthermia, and liver failure. *See* Am. Compl. ¶ 22. As a result of these complications, Decedent passed away on December 13, 2011. *Id*. Plaintiff is Decedent's mother and sole heir. *Id*. ¶ 18. USP Defendants manufactured, marketed, distributed, and sold the dietary supplements that caused Decedent's death with full knowledge of their health risks and without warning customers of their potentially deadly effects. *See id*. ¶¶ 23-71. USP Defendants repeatedly and knowingly misrepresented to Decedent and other customers that the dietary supplements were safe and effective, and Decedent consumed the supplements in reliance on these representations. *See id*. ¶¶ 19, 23-71, 100-01, 113, 116. All of the events giving rise to Plaintiff's claims occurred on Fort Bliss, within the exterior boundaries of the state of Texas. *See id*. ¶ 1.

Based on these allegations, Plaintiff raises negligence, strict products liability, breach of warranty, and wrongful death claims against USP Defendants. *See id*. ¶¶ 72-125. Plaintiff also seeks to impose collective liability against USP Defendants under a veil-piercing theory that disregards the separate entity status of each USP Defendant. *See id*. ¶¶ 5-9. Specifically, Plaintiff alleges that USP Defendants

> are engaged in a single enterprise of developing, marketing, and distributing dietary supplements. There exists . . . a unity of interest in ownership between and among [USP Defendants] such that any individuality and separateness between and among [them] has ceased and the individual [USP Defendants] are the alter-egos of and agents of each other and exerted control over each other.

*Id*. ¶ 8.

Plaintiff additionally alleges that Doyle and Geissler owned and controlled the limited liability

company ("LLC") Defendants and used those entities to shield themselves from liability for their

wrongful acts. *Id*. ¶¶ 5-7, 9. Plaintiff therefore contends that "[a]dherence to the fiction of the

separate existence of the [USP Defendants] would promote injustice and result in inequity[.]" *Id.*

¶ 9; *accord id*. ¶ 8.

Although Plaintiff does not raise a fraud cause of action, she does allege, in support of

her veil-piercing claims, that USP Defendants organized the LLC Defendants as a "sham to

perpetrate a fraud." *Id*. ¶ 9. Specifically, Plaintiff alleges that the LLC Defendants "were formed

for the purpose of selling untested and dangerous dietary supplements . . . which carried a high

risk of causing serious personal injuries, without being responsible to the injured customers." *Id.*

¶ 8. Plaintiff further alleges that USP Defendants engaged in fraudulent activity by intentionally

misleading Decedent and other consumers regarding the safety and efficacy of the dietary

supplements. *See id*. ¶¶ 19, 33-71, 100-01, 113-14, 116, 118. Plaintiff therefore claims that,

unless the Court disregards USP Defendants' separate entity status, USP Defendants' fraud will

be unjustly insulated from legal redress. *See id*. ¶¶ 8-9.

USP Defendants filed the Motion on February 25, 2014. *See* Mot. Plaintiff filed a

response (the "Response"), ECF No. 33,[3] on March 7, 2014. USP Defendants filed a reply (the

"Reply"), ECF No. 35, on March 14, 2014. In compliance with this Court's order requiring

further briefing in the Case, *see* ECF No. 38, USP Defendants and Plaintiff have also submitted

supplemental memoranda analyzing the application of Wyoming state law to the Case. *See*

---

[3] The Court refers to the pagination assigned to the Response by the Court's electronic docketing system, rather than
to the internal pagination assigned by Plaintiff.

Defs.' Br., ECF No. 42; Pl.'s Br., ECF No. 43.

## II.     DISCUSSION

### A.     Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a Rule 12(b)(6) motion, the Court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Though a complaint need not contain "detailed" factual allegations, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *accord Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted); *Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011). Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted). Nevertheless, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

4

However, a slightly different rule applies when a plaintiff alleges fraud in his or her complaint. Federal Rule of Civil Procedure 9(b) provides that a party alleging fraud "must state with particularity the circumstances constituting fraud . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) requires, at a minimum, 'that the plaintiff set forth the who, what, when, where, and how of the alleged fraud.'" *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (internal quotation marks omitted) (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). "A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *United States ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 185 n.8 (5th Cir. 2009) (citation and internal quotation marks omitted).

That said, Rule 9(b) "is not intended 'to procure punctilious detail,' and the particularity demanded by Rule 9(b) differs with the facts of each case." *Norfolk S. Ry. Co. v. Trinity Indus., Inc.*, No. 3–07–CV–1905–F, 2009 WL 362437, at *3 (N.D. Tex. Feb. 13, 2009) (quoting *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990)). "The rule must be applied in conjunction with the overall pleading requirements of Rule 8, which requires a short and plain statement of the claim showing that the pleader is entitled to relief." *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, Civil Action No. 3:07-CV-1985-B, 2009 WL 1174641, at *6 (N.D. Tex. Apr. 29, 2009) (citing *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 892 F.2d 1238, 1264 (5th Cir. 1990)). Rule 9(b) "must also be viewed in light of Rule 8's goal of 'simple, concise, and direct' pleadings." *Id*. at *6 (quoting *Landry*, 892 F.2d at 1264 n.92).

"[T]he pleading requirements of Rule 9(b) may be to some extent relaxed where . . . the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge." *U.S. ex rel.*

*Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (citing *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). In particular, a plaintiff may allege fraud upon information and belief if the complaint sets forth the factual basis for the plaintiff's belief. *See id.* (citing *ABC Arbitrage*, 291 F.3d at 350 n.67). However, "this exception 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" *Id.* (quoting *ABC Arbitrage*, 291 F.3d at 350 n.67).

When a court dismisses one or more of a plaintiff's claims pursuant to Rule 12(b)(6), the court should generally give the plaintiff an opportunity to amend his or her complaint to cure the defect unless amendment would be futile. *See Adams v. Energizer Holdings, Inc.*, Civil Action No. 3:12CV797TSL–JMR, 2013 WL 1791373, at *4 (S.D. Miss. Apr. 19, 2013) ("*Energizer*") (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000)).

### B.    Analysis

USP Defendants argue that all of Plaintiff's claims should be dismissed because she has failed to adequately allege that veil-piercing is warranted. *See* Mot. 10-19; Reply 3-8. USP Defendants further argue that the Court should dismiss Plaintiff's request for punitive damages. *See* Mot. 19-21.[4] The Court considers each challenge in turn.

---

[4] In the Initial Motion, USP Defendants also argued that Plaintiff lacked standing to pursue claims on Decedent's behalf. *See* Initial Mot. 10-12. Plaintiff then amended the pleadings to add allegations regarding Decedent's estate, Plaintiff's relationship to Decedent, and whether Decedent has any other surviving heirs. *Compare* Am. Compl. ¶ 18 *with* Original Compl., ECF No. 1 ¶ 16. USP Defendants do not pursue this line of argument in the Motion, except for an erroneous line in the table of contents that does not correspond with the contents of the Motion. *See* Mot. 2, 6-21; *accord* Reply 2-11. The Court therefore concludes that USP Defendants have abandoned this argument. *See* Resp. 9.

USP Defendants additionally argued in the Initial Motion that Plaintiff's claims must fail because Texas courts do not recognize the "single-business entity doctrine." *See* Initial Mot. 12. Plaintiff affirmed in her response to the Initial Motion that her claims are not based on the single-business entity doctrine, but rather on the veil-piercing doctrine. *See* ECF No. 30, at 12. Based on this representation, USP Defendants have not pursued their single-business entity arguments in the Motion. *See* Mot. 7 n.1.

### 1.      Plaintiff's veil-piercing allegations

Plaintiff contends that "any individuality and separateness between and among USP Defendants has ceased," such that "[a]dherence to the fiction of the separate existence of the USP Defendants as entities distinct from each other will permit an abuse of the corporate privilege and would sanction fraud and promote injustice." Am. Compl. ¶ 8. Plaintiff therefore requests that the Court disregard the separate entity status of USP Defendants and hold them collectively liable under a veil-piercing theory. *See* Resp. 11; Am. Compl. ¶¶ 5-9. USP Defendants respond that veil-piercing is not warranted in the Case, and request that the Court dismiss Plaintiff's attempts to impose liability via a veil-piercing theory.[5] *See* Mot. 10-19; Reply 3-8. To assess whether the Amended Complaint contains sufficient facts to survive a motion to dismiss on the issue of veil-piercing, the Court first discusses which state's veil-piercing law is applicable to each USP Defendant.

Plaintiff alleges that USP Defendants committed unlawful activities on the federal enclave of Fort Bliss that caused Decedent's death. *See* Am. Compl. ¶¶ 1, 3-125. As a result, the Case is governed by 16 U.S.C. § 457, which provides:

> In the case of the death of any person by the neglect or wrongful act of another within a national park or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be.

16 U.S.C. § 457 (1928).

The phrase "other place subject to the exclusive jurisdiction of the United States" includes

---

[5] Plaintiff argues that USP Defendants should be estopped from challenging Plaintiff's entitlement to the remedy of veil-piercing because of their "bad faith in the litigation thus far." Resp. 18. This argument is unaccompanied by argument or citation to legal authority, so the Court rejects it.

military installations such as Fort Bliss. *See Mathis v. Gen. Elec. Corp.*, 580 F.2d 192, 194 (5th Cir. 1978); *Burgio v. McDonnell Douglas Inc.*, 747 F. Supp. 865, 866 (E.D.N.Y. 1990). Because Plaintiff alleges that the events of the Case occurred on Fort Bliss, within the exterior boundaries of Texas, Plaintiff's claims are governed by Texas law. *See Vasina v. Grumman Corp.*, 644 F.2d 112, 118 (2d Cir. 1981) (holding that 16 U.S.C. § 457 "envisions the application of the current substantive law of the surrounding state in actions for death or personal injury occurring within a federal enclave"). Under the prevailing majority rule, this includes Texas's choice of law principles. *See Jenkins v. Whittaker*, 785 F.2d 720, 724 n.6 (9th Cir. 1986); *Burgio*, 747 F. Supp. at 866-69. *But see Adams v. Alliant Techsystems Inc.*, 218 F. Supp. 2d 792, 800-01 (W.D. Va. 2002) (rejecting *Burgio* and *Jenkins*).

Under Texas's choice-of-law rules, whether a corporation, LLC, or individual may be held liable pursuant to a veil-piercing theory is determined by the law of the state in which the entity is organized. *See Alberto v. Diversified Grp., Inc.*, 55 F.3d 201, 203 (5th Cir. 1995); *Taylor v. Cmty. Bankers Sec., LLC*, Civil Action No. H–12–02088, 2013 WL 3166336, at *3 n.5 (S.D. Tex. June 20, 2013) (citations omitted); *ExxonMobil Research & Eng'g Co. v. Gensym Corp.*, No. 1:12–CV–442–JDR, 2013 WL 1314461, at *2 (W.D. Tex. Mar. 28, 2013) (citing *Weaver v. Kellogg*, 216 B.R. 563, 585 (S.D. Tex. 1997)). Defendants USPLABS Jack3D, LLC; USPLABS OxyElite, LLC; and USPLABS Holding, LLC (the "Wyoming Defendants") are entities organized in Wyoming to which Wyoming veil-piercing law applies. *See* Defs.' Br. 2; Pl.'s Br. 3-4; Am. Compl. ¶ 3. By contrast, USPLABS, LLC; Doyle; and Geissler (the "Texas Defendants") are Texas entities or individuals to which Texas veil-piercing law applies. *See* Defs.' Br. 2; Pl.'s Br. 2; Am. Compl. ¶¶ 3, 5.

a.      **Wyoming Defendants**

For the following reasons, the Amended Complaint contains insufficient facts to demonstrate Plaintiff's entitlement to the remedy of veil-piercing against Wyoming Defendants.[6]

Under Wyoming law, even though a business entity such as a corporation or an LLC is legally "distinct from the individuals comprising it," a court may disregard the entity's separate legal status "whenever the recognition thereof in a particular case will lead to injustice." *Kaycee Land & Livestock v. Flahive*, 46 P.3d 323, 324-25 (Wyo. 2002) (citing *Opal Mercantile v. Tamblyn*, 616 P.2d 776, 778 (Wyo. 1980); *Caldwell v. Roach*, 12 P.2d 376, 380 (Wyo. 1932)). Veil-piercing is not itself a cause of action; rather, it "is a 'doctrine wherein liability for an underlying [cause of action] may be imposed upon a particular individual [or another entity].'" *Ridgerunner LLC v. Meisinger*, 297 P.3d 110, 116 (Wyo. 2013) (quoting *Dombroski v. WellPoint, Inc.*, 879 N.E.2d 225, 231 (Ohio Ct. App. 2007)). The decision whether to pierce an entity's veil is "a fact driven inquiry" that "centers on whether there is an element of injustice, fundamental unfairness, or inequity." *Kaycee Land & Livestock*, 46 P.3d at 325-26 (citing *Opal Mercantile*, 616 P.2d at 778).

Numerous factors are relevant when determining whether to pierce an entity's veil.[7] *See*

---

[6] The parties debate whether Plaintiff's veil-piercing allegations are governed by Federal Rule of Civil Procedure 9(b)'s heightened standard for fraud claims, or the more lenient Rule 8. *See* Mot. 11; Resp. 10, 13-14; Pl.'s Br. 1, 3, 10. The Court need not resolve whether Wyoming veil-piercing law is sufficiently intertwined with the element of fraud to trigger Rule 9(b)'s heightened pleading requirements. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998) (quoting *Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 283 (D. Del. 1993)) ("Although the language of Rule 9(b) confines its requirements to claims of . . . fraud, the requirements of the rule apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud."). Assuming without deciding that the more lenient Rule 8 standard applies to Plaintiff's veil-piercing allegations against Wyoming Defendants, Plaintiff's allegations are still not sufficient to survive a motion to dismiss.

[7] The full – albeit nonexhaustive – list of relevant factors is as follows:

> Among the possible factors pertinent to the trial court's determination are: commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses; the treatment by an individual of the

*id*. at 325 (quoting *Miles v. CEC Homes, Inc.*, 753 P.2d 1021, 1023 (Wyo. 1988)). However, four factors are particularly important when the entity in question is an LLC: (1) fraud; (2) inadequate capitalization; (3) failure to observe company formalities; and (4) intermingling of business and assets. *Gasstop Two, LLC v. Seatwo, LLC*, 225 P.3d 1072, 1077 (Wyo. 2010) (quoting Phillip L. Jelsma and Pamela Everett Nollkamper (Phillip P. Whynott), *The Limited Liability Company*, § 11:130 (2009)). *See also Lieberman v. Mossbrook*, 208 P.3d 1296, 1312 (Wyo. 2009) (citing *Kaycee Land & Livestock*, 46 P.3d at 328-29) ("[T]he equitable remedy of piercing the veil is also available in the context of limited liability companies, although the factors justifying piercing the veil may be different than in the corporate setting."). With the exception of fraud, no single factor is sufficient or necessary to pierce the entity's veil; the court should analyze these four factors in tandem. *See Gasstop Two, LLC*, 225 P.3d at 1077-79. Fraud is not necessary, but under some circumstances can be sufficient, for veil-piercing. *See Kaycee Land & Livestock*, 46 P.3d at 328; *Panamerican Mineral Servs., Inc. v. KLS Enviro Res., Inc.*, 916 P.2d 986, 990 (Wyo. 1996) (citations omitted); *Bergh v. Mills*, 763 P.2d 214, 218 (Wyo. 1988) (citations

---

assets of the corporation as his own; the failure to obtain authority to issue or subscribe to stock; the holding out by an individual that he is personally liable for the debts of the corporation; the failure to maintain minutes or adequate corporate records and the confusion of the records of the separate entities; the identical equitable ownership in the two entities; the identification of the equitable owners thereof with the domination and control of the two entities; identification of the directors and officers of the two entities in the responsible supervision and management; the failure to adequately capitalize a corporation; the absence of corporate assets, and undercapitalization; the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest or concealment of personal business activities; the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; the use of the corporate entity to procure labor, services or merchandise for another person or entity; the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; the contracting with another with intent to avoid performance by use of a corporation as a subterfuge of illegal transactions; and the formation and use of a corporation to transfer to it the existing liability of another person or entity.

*Kaycee Land & Livestock*, 46 P.3d at 325 (quoting *Miles*, 753 P.2d at 1023).

omitted); *Amfac Mech. Supply Co. v. Federer*, 645 P.2d 73, 79 (Wyo. 1982), *abrogated on other grounds by Tex. W. Oil & Gas Corp. v. First Interstate Bank of Casper*, 743 P.2d 857 (Wyo. 1987) (citing *Wyo. ex rel. Christensen v. Nugget Coal Co.*, 144 P.2d 944 (Wyo. 1944)). However, the Supreme Court of Wyoming has not explicitly identified the circumstances in which fraud, standing alone, is *insufficient* to justify veil-piercing. *See Panamerican Mineral Servs., Inc.*, 916 P.2d at 990; *Bergh*, 763 P.2d at 218. Nevertheless, the Supreme Court of Wyoming has implied that fraud is sufficient only when honoring the corporate fiction would result in injustice, such as when the defendant has committed fraud in the capitalization of the entity. *See Panamerican Mineral Servs., Inc.*, 916 P.2d at 990; *Bergh*, 763 P.2d at 218; *Amfac Mech. Supply Co.*, 645 P.2d at 79 (citing *Christensen*, 144 P.2d 944).

The Court concludes that the Amended Complaint contains insufficient allegations to justify disregarding Wyoming Defendants' separate entity status. Plaintiff, at most, alleges that Wyoming Defendants are all owned and controlled by Doyle and Geissler, and that Wyoming Defendants engaged in a single enterprise of developing, marketing, and selling unsafe and ineffective dietary supplements. *See* Am. Compl. ¶¶ 5-9. However, mere unity of control and ownership is insufficient to justify veil-piercing. *See Medina v. Four Winds Int'l Corp.*, 111 F. Supp. 2d 1164, 1168-69 (D. Wyo. 2000) (quoting *Atlas Constr. Corp. v. Slater*, 746 P.2d 352, 355-56 (Wyo. 1987)). The Amended Complaint does not, for example, contain allegations of undercapitalization, a failure to observe company formalities, intermingling of assets, or any other factor that could justify piercing Wyoming Defendants' veils. *See* Am. Compl. ¶¶ 5-9.

That said, as discussed in greater detail above, Plaintiff does allege that Wyoming Defendants committed fraud when marketing their products. *See id*. ¶¶ 19, 23-71, 100-01, 113, 116. Fraud is sometimes sufficient to justify veil-piercing under Wyoming law. *See Kaycee Land*

& *Livestock*, 46 P.3d at 328; *Panamerican Mineral Servs., Inc.*, 916 P.2d at 990 (citations

omitted); *Bergh*, 763 P.2d at 218 (citations omitted); *Amfac Mech. Supply Co.*, 645 P.2d at 79

(citing *Christensen*, 144 P.2d 944). However, Plaintiff has not alleged fraud in the capitalization

of Wyoming Defendants, or any other circumstance indicating that veil-piercing is necessary to

avoid the inequitable effects of Wyoming Defendants' alleged activities. *See Bergh*, 763 P.2d at

218; *Amfac Mech. Supply Co.*, 645 P.2d at 79. That is, even assuming that Wyoming Defendants

committed fraud when marketing their products, the Amended Complaint contains no allegation

that Wyoming Defendants fraudulently manipulated their assets to render them unavailable to

fully satisfy a tort or contract judgment in Plaintiff's favor. *See* Am. Compl. ¶¶ 5-9, 19, 23-71,

100-01, 113, 116. Thus, there is no suggestion that respecting the separate entity status of

Wyoming Defendants would insulate their allegedly fraudulent activities from legal redress. *See*

*Eastridge Dev. Co. v. Halpert Assocs., Inc.*, 853 F.2d 772, 780 (10th Cir. 1988) (quoting *Amfac*

*Mech. Supply Co.*, 645 P.2d at 81); *Gasstop Two, LLC*, 225 P.3d at 1078-79; *Atlas Constr.*

*Corp.*, 746 P.2d at 356-57 (quoting Harvey Gelb, *Piercing the Corporate Veil – The*

*Undercapitalization Factor*, 59 Chi.-Kent L. Rev. 1, 4, 14-15 (1982)).

Thus, Plaintiff has failed to plausibly allege that the Court should pierce Wyoming

Defendants' veils to avoid injustice. *See Gasstop Two, LLC*, 225 P.3d at 1079; *Kaycee Land &*

*Livestock*, 46 P.3d at 325-26 (citing *Opal Mercantile*, 616 P.2d at 778). The Court therefore

grants the Motion insofar as it seeks to dismiss Plaintiff's veil-piercing theory against Wyoming

Defendants.

However, Plaintiff has requested leave to further amend her pleadings in the event that

this Court deems her veil-piercing allegations inadequate. *See* Resp. 18-22; Pl's Br. 5-9. Plaintiff

proposes numerous additional veil-piercing allegations that she plans to include in her second

12

amended complaint, if the Court permits her to file one. *See* Resp. 18-22; Pl's Br. 5-9. Though the Court does not decide at this time whether these additional allegations would be sufficient to demonstrate Plaintiff's entitlement to veil-piercing under Wyoming law, the Court at least concludes that such an amendment would not necessarily be futile. *See Energizer*, 2013 WL 1791373, at *4 (citing *Hart*, 199 F.3d at 248 n.6). Plaintiff's deadline to file motions to amend the pleadings has not yet expired, so Plaintiff may move to amend her complaint to cure the aforementioned defects. *See* ECF No. 40.

### b.    Texas Defendants

The Court next considers whether Plaintiff has alleged sufficient facts to disregard the separate entity status of Texas Defendants.

Under Texas law, a corporation or LLC is a separate legal entity that ordinarily insulates its owners, shareholders, or members from liability. *See Weston Grp., Inc. v. S.W. Home Health Care, LP*, Civil Action No. 3:12-CV-1964-G, 2014 WL 940329, at *4 (N.D. Tex. Mar. 11, 2014) (citing Tex. Bus. Orgs. Code § 21.223); *Schlueter v. Carey*, 112 S.W.3d 164, 169 (Tex. App. June 5, 2003) (citing *Pabich v. Kellar*, 71 S.W.3d 500, 507 (Tex. App. 2002)). Nevertheless, a court may disregard a business entity's separate legal status in appropriate circumstances. *See Weston Grp., Inc.*, 2014 WL 940329, at *4; *Schlueter*, 112 S.W.3d at 169-70. Not only is it possible for a plaintiff to hold an individual liable for the acts of a business entity, it is also possible to hold a parent company liable for the acts of its subsidiary, or vice versa. *See U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, Civil Action No. 3:10-CV-1842-G, 2012 WL 3100778, at *16 (N.D. Tex. July 31, 2012) (citing *Chao v. OSHRC*, 401 F.3d 355, 364 (5th Cir. 2005); *Union Carbide Corp. v. Montell N.V.*, 944 F. Supp. 1119, 1144 (S.D.N.Y. 1996)). "Texas courts apply the same veil-piercing principles to both corporations and [LLCs]." *Adams Offshore*

*Ltd. v. OSA Int'l, LLC*, Civil Action No. H-09-0465, 2011 WL 4625371, at *8 (S.D. Tex. Sept. 30, 2011) (citing *Roustan v. Sanderson*, No. 02–09–00377–CV, 2011 WL 4502265 (Tex. App. Sept. 29, 2011); *McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 590 (Tex. App. 2007)). *See generally* Tex. Bus. Orgs. Code Ann. § 101.002(b)(3) (West 2011); *Shook v. Walden*, 368 S.W.3d 604, 607 (Tex. App. 2012). Veil-piercing "is not a claim or independent cause of action" under Texas law; instead, "it is a remedy to enforce a claimed substantive right." *U.S. Bank Nat'l Ass'n*, 2012 WL 3100778, at *16 (citing *W. Oil & Gas JV, Inc. v. Griffiths*, 91 F. App'x 901, 903-04 (5th Cir. 2003)).

There are multiple bases for piercing the corporate veil under Texas law, and each has its own distinct requirements.[8] *See Aaron v. LeDay*, Civ. Action No. 4:13-CV-01716, 2013 WL 5936623, at *8-9 (S.D. Tex. Nov. 5, 2013) (citations omitted); *Schlueter*, 112 S.W.3d at 168 (Tex. App. June 5, 2003) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 271-72, 275 & n.5 (Tex. 1986)). Here, Plaintiff pleads the "alter ego" theory and the "sham to perpetrate a fraud" theory. *See* Am. Compl. ¶¶ 8-9. The Court discusses each theory in greater detail below.

Whether a plaintiff may pierce an entity's veil pursuant to either the alter ego theory or the sham to perpetrate a fraud theory depends on whether the plaintiff's claims sound in tort or contract. Whereas a tort claimant may freely pierce the veil under either of these theories, a contract claimant may only pierce the veil if the defendant has also committed an actual fraud

---

[8] Specifically, a court may disregard the corporate/LLC fiction:
    (1) when the fiction is used as a means of perpetrating fraud;
    (2) where a corporation is organized and operated as a mere tool or business conduit [that is, as the alter ego] of another corporation;
    (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation;
    (4) where the corporate fiction is employed to achieve or perpetrate monopoly;
    (5) where the corporate fiction is used to circumvent a statute; and
    (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.
*SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2008) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 271-72 (Tex. 1986)).

against the plaintiff for the defendant's direct personal benefit. *See Aaron*, 2013 WL 5936623, at

*9; *Strange v. Lindemann*, 408 S.W.3d 658, 660-61 & n.1 (Tex. App. 2013); Tex. Bus. Orgs.

Code §§ 21.223-24. Actual fraud, in this context, involves dishonesty of purpose or intent to

deceive, and is not equivalent to the tort of fraud. *Weston Grp., Inc.*, 2014 WL 940329, at *4

(quoting *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013); *Latham v.

Burgher*, 320 S.W.3d 602, 607 (Tex. App. 2010)).

Whereas Plaintiff's negligence, products liability, and wrongful death claims sound in

tort, her breach of warranty claim sounds in contract. *See Med. City Dall., Ltd. v. Carlisle Corp.*,

251 S.W.3d 55, 61 n.5 (Tex. 2008) (citations omitted). Therefore, the Court assesses Plaintiff's

breach of warranty claim under the more rigorous actual fraud standard, and her tort claims

under the traditional alter ego and "sham to perpetrate a fraud" standards.

### i.        Plaintiff's tort claims

The Court first considers whether the Amended Complaint contains sufficient allegations

to justify piercing the veil of Texas Defendants as to Plaintiff's tort claims. The Court assesses

whether Plaintiff's allegations are sufficient under either the alter ego theory or the "sham to

perpetrate a fraud" theory.

### I.        Alter ego

"The alter ego theory of liability occurs . . . 'where a corporation [or LLC] is organized

and operated as a mere tool or business conduit of another.'" *Wilson v. Davis*, 305 S.W.3d 57, 69

(Tex. App. 2009) (quoting *Castleberry*, 721 S.W.2d at 272). Alter ego applies when there is such

unity between the business entity and the individual or subsidiary that the separateness of the

business entity has ceased, and holding only the business entity liable would result in injustice.

*U.S. Bank Nat'l Ass'n*, 2012 WL 3100778, at *16 (citations omitted); *Schlueter*, 112 S.W.3d at

168 (citing *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990); *Castleberry*, 721 S.W.2d at 272).

When deciding whether to impose alter ego liability in a tort case, the court considers "the degree to which . . . corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation [or LLC], and whether the corporation has been used for personal purposes." *Wilson*, 305 S.W.3d at 69 (citing *Castleberry*, 721 S.W.2d at 272). *Accord Adams Offshore Ltd.*, 2011 WL 4625371, at *9 (citing *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317 (5th Cir. 2006)); *Schlueter*, 112 S.W.3d at 168 (citing *Mancorp, Inc.*, 802 S.W.2d at 228; *Castleberry*, 721 S.W.2d at 272). The court should also consider whether an individual defendant has paid corporate/LLC debts using personal checks; whether an individual defendant has represented that he or she will financially back the corporation/LLC; and whether the corporation/LLC is adequately capitalized. *Doyle v. Kontemporary Builders, Inc.*, 370 S.W.3d 448, 458 (Tex. App. 2012) (citing *Mancorp, Inc.*, 802 S.W.2d at 228; *Penhollow Custom Homes, LLC v. Kim*, 320 S.W.3d 366, 372 (Tex. App. 2010); *Sparks v. Booth*, 232 S.W.3d 853, 868 (Tex. App. 2007)); *Burchinal v. PJ Trailers-Seminole Mgmt. Co.*, 372 S.W.3d 200, 218 (Tex. App. 2012). All of the aforementioned factors are potentially relevant; no single factor is sufficient or necessary. *See Wilson*, 305 S.W.3d at 69 (quoting *Castleberry*, 721 S.W.2d at 273) (describing the veil-piercing inquiry as "flexible" and "fact-specific").

Again, Plaintiff alleges, at most, that Texas Defendants are all owned and controlled by Doyle and Geissler, and that Texas Defendants engaged in a single enterprise of developing, marketing, and selling unsafe and ineffective dietary supplements. *See* Am. Compl. ¶¶ 5-9. However, "a court may not pierce the corporate veil on a mere showing that an individual served

as a director and officer of a corporation [or LLC] and that he held an ownership interest in the [entity]." *Goldstein v. Mortenson*, 113 S.W.3d 769 (Tex. App. 2003). *Accord Flores v. Bodden*, 488 F. App'x 770, 777 (5th Cir. 2012) (citations omitted); *Doyle*, 370 S.W.3d at 458 (citations omitted). Moreover, "[p]arties are not . . . jointly liable for a corporation's obligations 'merely because they were part of a single business enterprise,' i.e., 'merely because of centralized control, mutual purposes, and shared finances.'" *Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 508 (Tex. App. 2012) (quoting *SSP Partners*, 275 S.W.3d at 455).

Nor does the Amended Complaint contain allegations relating to any other factor relevant to an alter ego determination under Texas law. Plaintiff does not, for instance, allege that Texas Defendants intermingled finances or assets, or that they exploited the LLCs for personal purposes. *See* Am. Compl. ¶¶ 5-9. Nor does Plaintiff allege that Doyle or Geissler paid or promised to pay LLC debts, or that Texas Defendants are undercapitalized. *See id*. Though none of these factors are sufficient or necessary, *see Wilson*, 305 S.W.3d at 69 (quoting *Castleberry*, 721 S.W.2d at 273), Plaintiff has, on balance, failed to allege facts indicating that veil-piercing would be warranted against Texas Defendants. *See Doyle*, 370 S.W.3d at 458 (citing *Mancorp, Inc.*, 802 S.W.2d at 228; *Penhollow Custom Homes, LLC*, 320 S.W.3d at 372; *Sparks*, 232 S.W.3d at 868); *Wilson*, 305 S.W.3d at 69 (citing *Castleberry*, 721 S.W.2d at 272). The Court therefore grants the Motion as to Plaintiff's alter ego theory underlying her tort claims against Texas Defendants. *See Adams Offshore Ltd.*, 2011 WL 4625371, at *10.

## II.      Sham to perpetrate a fraud

The Court next considers whether Plaintiff has sufficiently pleaded that Texas Defendants undertook a "sham to perpetrate a fraud." As noted above, Plaintiff alleges that Texas Defendants formed the LLC entities solely to escape liability for selling dangerous

17

products and misleading customers. *See* Am. Compl. ¶¶ 5-9, 19, 33-71, 100-01, 113-14, 116,

118. Texas Defendants respond that the Court must dismiss Plaintiff's "sham to perpetrate a

fraud" allegations because they do not satisfy Federal Rule of Civil Procedure 9(b)'s heightened

pleading standard, and because Plaintiff has failed to adequately allege facts establishing such a

sham. *See* Mot. 10-19; Reply 3-4, 7-8.

       The sham to perpetrate a fraud theory requires the plaintiff to demonstrate that the entity

to be pierced acted in a fraudulent manner. *See Adams Offshore Ltd.*, 2011 WL 4625371, at *8

(citing *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1035 (5th Cir.

2010)). Because the theory requires some showing of fraud, the plaintiff must satisfy Federal

Rule of Civil Procedure 9(b)'s heightened pleading requirements. *Hidden Values, Inc. v. Wade*,

Civil Action No. 3:11-CV-1917-L, 2012 WL 1836087, at *4, *10 (N.D. Tex. May 18, 2012); *In

re Parkcentral Global Litig.*, Civil Action No. 3:09-CV-0765-M, 2010 WL 3119403, at *3 &

n.25 (N.D. Tex. Aug. 5, 2010); *Lincoln Gen. Ins. Co.*, 2009 WL 1174641, at *6-7.

       "Rule 9(b) requires, at a minimum, 'that the plaintiff set forth the who, what, when,

where, and how of the alleged fraud.'" *Steury*, 625 F.3d at 266 (internal quotation marks

omitted) (quoting *Thompson*, 125 F.3d at 903). General allegations that lump the defendants

together, without segregating the alleged wrongdoing of one defendant from those of another, do

not meet the requirements of Rule 9(b). *Douglas v. Renola Equity Fund II, LLC*, Civil Action

No. 13–6192, 2014 WL 1050851, at *6 (E.D. La. Mar. 14, 2014); *Goodarzi v. Hartzog*, Civil

Action No. H–12–2870, 2014 WL 722109, at *8 n.7 (S.D. Tex. Feb. 21, 2014); *Guthrie v. Plains

Res. Inc.*, No. 2:12 CV–1904–PM–KK, 2013 WL 2471670, at *8-9 (W.D. La. June 7, 2013);

*Parkcentral*, 2010 WL 3119403, at *3, *10-11 (citing *Patel v. Holiday Hospitality Franchising,

Inc.*, 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001)); *Ergonomic Lighting Sys., Inc. v. Commercial

*Petroleum Equip./USALCO*, No. SA–02–CA–0031 RF(NN), 2003 WL 22436101, at *3 (W.D.

Tex. Oct. 21, 2003). Referring to the defendants collectively, "without distinguishing which

entity or persons committed the various alleged fraudulent conduct," is generally insufficient.

*Hidden Values, Inc.*, 2012 WL 1836087, at *4.

Notwithstanding the foregoing, however, "[m]ultiple defendants' conduct may be

'lumped together'" without violating Rule 9(b) "if the plaintiff's allegations elsewhere designate

the nature of the defendant's relationship to a particular scheme and identify the defendants'

role" in the alleged fraud.[9] *Bhatia v. Dischino*, Civil Action No. 3:09-CV-1086-B, 2011 WL

3820825, at *12 (N.D. Tex. Aug. 29, 2011) (citing *Steiner*, 734 F. Supp. at 274). *Accord DT*

*Apartment Grp., LP v. CWCapital, LLC*, Civil Action No. 3:12–CV–0437–D, 2012 WL

6693192, at *8 (N.D. Tex. Dec. 26, 2012).

Plaintiff alleges that USP Defendants knew their products were unsafe and ineffective,

but nonetheless affirmatively represented the opposite to customers, including Decedent, on

multiple occasions. *See* Am. Compl. ¶¶ 19, 23-71, 100-01, 113, 116. However, almost none of

Plaintiff's numerous allegations identify which Defendant made which allegedly fraudulent

misrepresentation.[10] *See id*. ¶¶ 19, 23, 33-35, 37-40, 42, 44-45, 47-59, 62-64, 71. Plaintiff instead

alleges generally that "Defendants," "USP Defendants," "USPLabs," or "USP" issued press

releases and other statements falsely promising that the supplements were effective and safe. *See*

---

[9] Additionally, a plaintiff may permissibly lump defendants together in a manner that satisfies Rule 9(b) where the complaint also contains adequate allegations that the defendants are alter egos of each other. *See Infomart (India), Pvt., Ltd. v. Metrowerks Corp.*, No. Civ.A.3:04-CV-1299-N, 2005 WL 292433, at *4 (N.D. Tex. Feb. 7, 2005) (citations omitted). This option is unavailable to Plaintiff because, for the reasons discussed previously, Plaintiff has failed to properly allege that Texas Defendants are alter egos of each other.

[10] The single exception is Plaintiff's allegation that Geissler personally made misrepresentations on fitness blogs and websites. *See* Am. Compl. ¶ 36. This, however, is insufficient to connect the alleged sham to perpetrate a fraud to the remaining Defendants.

*id*. Because the Amended Complaint lumps the Defendants together in an attempt to establish fraud, Plaintiff may only satisfy Rule 9(b) if the Amended Complaint elsewhere specifies each Defendant's role in the alleged fraud. *See DT Apartment Grp., LP*, 2012 WL 6693192, at *8; *Bhatia*, 2011 WL 3820825, at *12 (citing *Steiner*, 734 F. Supp. at 274).

The Amended Complaint fails to do so. Plaintiff does not differentiate between the LLC Defendants or specify each LLC's specific connection to the alleged fraud. *See* Am. Compl. ¶¶ 3, 8, 10, 12. Although the Amended Complaint does specify that the individual Defendants controlled and managed the LLCs, it contains no specific allegations regarding Doyle's individual participation in the alleged fraud, and only minimal allegations regarding Geissler's role. *See id.* ¶¶ 5-7, 9, 36. Because Plaintiff does not specify the role of each Defendant in the alleged fraud, the Court dismisses her "sham to perpetrate a fraud" theory to the extent it relates to her tort claims. *See DT Apartment Grp., LP*, 2012 WL 6693192, at *8; *Bhatia*, 2011 WL 3820825, at *12 (citing *Steiner*, 734 F. Supp. at 274).

### ii.    Plaintiff's breach of warranty claim

The Court next considers Plaintiff's veil-piercing allegations against Texas Defendants as they relate to her breach of warranty claim. Because this claim sounds in contract, *see Med. City Dall., Ltd.*, 251 S.W.3d at 61 n.5 (citations omitted), Plaintiff's veil-piercing allegations may only survive if she has sufficiently pleaded an actual fraud for Defendants' direct personal benefit. *See Aaron*, 2013 WL 5936623, at *9; *Strange*, 408 S.W.3d at 660-61 & n.1; Tex. Bus. Orgs. Code §§ 21.223-24. Actual fraud, in this context, involves dishonesty of purpose or intent to deceive, and is not equivalent to the tort of fraud. *Weston Grp., Inc.*, 2014 WL 940329, at *4 (quoting *Spring Street Partners-IV, L.P.*, 730 F.3d at 443; *Latham*, 320 S.W.3d at 607).

A plaintiff alleging actual fraud within the meaning of Texas Business and Organizations

20

Code § 21.223 must comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *See Global Oil Tools, Inc. v. Barnhill*, Civil Action Nos. 12:1507, 12–3041, 2013 WL 3070838, at *13 (E.D. La. June 17, 2013) (applying Texas veil-piercing law); *Lonrho PLC v. Starlight Invs., LLC*, Civil Action No. H–11–2939, 2012 WL 4215754, at *2 (S.D. Tex. Sept. 18, 2012); *Hidden Values, Inc.*, 2012 WL 1836087, at *4; *Lincoln Gen. Ins. Co.*, 2009 WL 1174641, at *6-7. *But see Weston Grp., Inc.*, 2014 WL 940329, at *2 (departing from majority rule); *Aaron*, 2013 WL 5936623, at *6 (avoiding question of whether Rule 9(b) applies to § 21.223's actual fraud requirement).

Plaintiff's allegations of actual fraud, just like her allegations of a sham to perpetrate a fraud, lump all of the USP Defendants together without differentiating them. *See* Am. Compl. ¶¶ 19, 23, 33-35, 37-40, 42, 44-45, 47-59, 62-64, 71. Nor does Plaintiff specify each Defendant's role in the alleged fraud. *See id.* ¶¶ 3, 5-10, 12, 36. Because Plaintiff has failed to differentiate between the various Defendants, the Amended Complaint does not satisfy Rule 9(b). The Court therefore dismisses Plaintiff's veil-piercing theory against Texas Defendants insofar as it relates to her breach of warranty claim. *See Douglas*, 2014 WL 1050851, at *6; *Goodarzi*, 2014 WL 722109, at *8 n.7; *Guthrie*, 2013 WL 2471670, at *8-9; *DT Apartment Grp., LP*, 2012 WL 6693192, at *8; *Hidden Values, Inc.*, 2012 WL 1836087, at *4; *Bhatia*, 2011 WL 3820825, at *12 (citing *Steiner*, 734 F. Supp. at 274); *Parkcentral*, 2010 WL 3119403, at *3, *10-11 (citing *Patel*, 172 F. Supp. 2d at 824); *Ergonomic Lighting Sys., Inc.*, 2003 WL 22436101, at *3 (citations omitted).

### iii.    Dismissal and leave to amend

Although the Court has dismissed Plaintiff's veil-piercing theory of recovery against Texas Defendants, Plaintiff has requested leave to amend her pleadings to include additional

alter ego allegations. *See* Resp. 18-22; Pl's Br. 5-9. Plaintiff also states that she is willing and able to amend the pleadings to specify which entity made which allegedly fraudulent statement in order to rehabilitate her "sham to perpetrate a fraud" and actual fraud allegations. *See* Resp. 9. The Court does not decide at this time whether these additional allegations would be sufficient to demonstrate Plaintiff's entitlement to veil-piercing under Texas law, but the Court at least concludes that such an amendment would not necessarily be futile. *See Energizer*, 2013 WL 1791373, at *4 (citing *Hart*, 199 F.3d at 248 n.6). Because Plaintiff's deadline to file motions to amend the pleadings has not yet expired, Plaintiff may move to amend her complaint to cure the aforementioned defects. *See* ECF No. 40.

c.        **Plaintiff's substantive claims against the LLC Defendants**

The Court has dismissed Plaintiff's attempts to impose liability against USP Defendants collectively pursuant to a veil-piercing theory, albeit while granting Plaintiff leave to amend. USP Defendants argue that, because the Court has dismissed Plaintiff's veil-piercing allegations, the Court should also dismiss all of Plaintiff's substantive claims against all Defendants. Mot. 14, 18-19, 21; Reply 11.

The Court rejects USP Defendants' argument. As noted above, veil-piercing is merely a remedy pursuant to which liability for an underlying cause of action may be imposed against a particular entity. *See U.S. Bank Nat'l Ass'n*, 2012 WL 3100778, at *16 (citing *W. Oil & Gas JV, Inc.*, 91 F. App'x at 903-04); *Ridgerunner LLC*, 297 P.3d at 116 (quoting *Dombroski*, 879 N.E.2d at 231). Even if one of the USP Defendants ultimately cannot be held liable for the legal obligations of its co-defendants because of its separate entity status, that Defendant may still be held directly liable for its own tortious activities, if proven. *See Ridgerunner LLC*, 297 P.3d at 116-17 (affirming dismissal of veil-piercing allegations, but reversing dismissal of complaint in

its entirety, where corporation could be held directly liable); *cf. RPost Holdings, Inc. v. Readnotify.com Pty. Ltd.*, Cause No. 2:11-CV-16-JRG, 2012 WL 3201898, at \*2 (E.D. Tex. June 29, 2012) (allowing claim to proceed against individual defendant where plaintiffs asserted claims against him "individually only" and "d[id] not intend to pierce the corporate veil"). The Court therefore denies the Motion insofar as USP Defendants seek to dismiss the Amended Complaint in its entirety.

### 2.    Punitive damages

Plaintiff alleges that she is entitled to punitive damages. *See* Am. Compl. ¶¶ 112-21. USP Defendants argue that "[p]ursuant to the Constitution of the State of Texas, [Plaintiff] is barred from obtaining punitive damages." Mot. 20. Specifically, USP Defendants argue that parents of a deceased child are not among the beneficiaries authorized to recover punitive damages in wrongful death actions. *See id*. Plaintiff concedes that she may not "recover punitive damages on behalf of *her* wrongful death claim," but argues that "she is allowed to bring a claim *on behalf of* her daughter, upon which punitive damages can be assessed." Resp. 16.

Article XVI, section 26 of the Constitution of the State of Texas, which governs the recovery of punitive damages in wrongful death actions, reads as follows:

> Every person, corporation, or company, that may commit a homicide, through wilful act, or omission, or gross neglect, shall be responsible, in exemplary damages,[11] to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide.

Tex. Const. art. XVI, § 26.

"It is well established that this provision defines the class of persons who are entitled to recover punitive damages for wrongful death; parents of the deceased . . . are not included in article XVI,

---

[11] Exemplary damages and punitive damages are synonymous. *See* Black's Law Dictionary (9th ed. 2009); *accord Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 921-24 (Tex. 1993).

§ 26 and are therefore unable to recover punitive damages." *Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 923 (Tex. 1993) (citing *Winnt v. Int'l & G.N. Ry. Co.*, 11 S.W. 907, 908 (Tex. 1889)). Therefore, the Court grants the Motion insofar as it seeks to dismiss Plaintiff's request for punitive damages on her wrongful death claim. Because the Texas Constitution categorically bars parents of decedents from recovering punitive damages on wrongful death claims, the Court will not allow Plaintiff to amend this aspect of her pleadings, as doing so would be futile. *See Energizer*, 2013 WL 1791373, at *4 (citing *Hart*, 199 F.3d at 248 n.6).

Nevertheless, even though Plaintiff cannot recover punitive damages on her wrongful death claim, she may ultimately be able to recover punitive damages on her survival claims. Whereas a wrongful death claim constitutes "a new cause of action in favor of certain named survivors" that arises at the time of the decedent's death, a survival claim merely "ke[eps] alive the cause of action that the deceased might have had" if he or she had survived. *Hofer v. Lavender*, 679 S.W.2d 470, 476 (Tex. 1984). Article XVI, section 26 of the Texas Constitution only limits punitive damages in wrongful death claims; it does not prohibit punitive damage awards for survival actions. *See Ellison v. Messerschmitt-Bolkow-Blohm*, 807 F. Supp. 39, 42 (E.D. Tex. 1992); *Hofer*, 679 S.W.2d at 475-76; *Tex. Health Enters., Inc. v. Geisler*, 9 S.W.3d 163, 168 (Tex. App. 1999). Therefore, the Court denies the Motion insofar as it seeks to dismiss Plaintiff's request for punitive damages on her survival claims.

## III.   CONCLUSION

It is therefore **ORDERED** that the Motion, ECF No. 32, is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that the Motion is **GRANTED** to the extent it seeks to dismiss Plaintiff's veil-piercing theory against Wyoming Defendants.

**IT IS FURTHER ORDERED** that the Motion is **GRANTED** to the extent it seeks to dismiss Plaintiff's veil-piercing theory against Texas Defendants.

**IT IS FURTHER ORDERED** that the Motion is **DENIED** insofar as it seeks to dismiss all of Plaintiff's underlying substantive claims against USP Defendants.

**IT IS FURTHER ORDERED** that the Motion is **GRANTED** insofar as it seeks to dismiss Plaintiff's request for punitive damages on her wrongful death claim.

**IT IS FURTHER ORDERED** that the Motion is **DENIED** insofar as it seeks to dismiss Plaintiff's request for punitive damages on her survival claims.

**IT IS FURTHER ORDERED** that Plaintiff may move to further amend her pleadings in a manner consistent with this Order, this Court's Scheduling Order, ECF No. 40, and applicable law.

**IT IS FURTHER ORDERED** that the Initial Motion, ECF No. 28, is **DENIED** as moot.

**SO ORDERED**.

**SIGNED this 10th day of June, 2014.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE